# ROBERT H. MORRIS

## V.

# UNITED VIRGINIA BANK, EXECUTOR, ETC., ET AL.

Record No. 860830

March 3, 1989

Present: All the Justices

332

*Bowlman T. Bowles, Jr. (David T. Whitehead; Robin M. Morgan; Bowles & Whitehead*, on briefs), for appellant.

*William R. Mauck, Jr. (Sandy T. Tucker; Williams, Mullen, Christian & Dobbins, P.C.,* on brief), for appellee United Virginia Bank, Executor of the Estate of Mary Hey Caudle.

*Thomas F. Coates, III (Coates & Davenport,* on brief), for appellees David A. Hey, Suzanne Hey Gilmore, Sarah Hey Atkins and Richard Hey.

No argument or brief for appellee Julia A. Morris.

RUSSELL, J., delivered the opinion of the Court.

This is an appeal from an order sustaining exceptions to a report filed by the commissioner of accounts. The dispositive question is whether the court erroneously substituted its judgment for that of the commissioner without finding that the commissioner's report was unsupported by the evidence.

Mary Hey Caudle was a childless widow residing in Richmond who died on July 30, 1983, at the age of 94. She had been a successful business-woman for many years and remained fully alert and mentally competent until her death. The natural objects of her bounty were nieces and nephews. She was particularly generous to two nephews, David Hey, who lived in California, and Robert Howell Morris, who lived in Richmond.

The large home in which Mrs. Caudle resided alone was broken into by burglars on two occasions in 1980. She became afraid to remain there, but did not want to go into a nursing home. Mr. Morris, on several occasions, offered to provide room, board, and personal care for her in his home. He testified that Mrs. Caudle said, "I had whole lot rather pay y'all than a nursing home at the nursing home rate than go to the nursing home . . . ." On January 2, 1981, she moved into the Morris home on that understanding.

Later that month, Mrs. Caudle had three documents prepared which she signed in the presence of two disinterested witnesses. One document reads:

January 25, 1981

To Whom it May Concern,

It was my decision prior to making my home with R. Howell Morris and his family on January 2, 1981 that I pay whatever the rate would be at a nursing home to him for my

room, board and care. It is my desire to do this in a lump sum at my death. This is not to include any of my medical care or doctor's fees, only room, board and care.

I suggest that the rates at Chesterfield Nursing Home be used to compute this at my death, since that is where I would wish to go if it became necessary due to a condition that made it impossible to be cared for in Howell's home.

I hereby direct United Virginia Bank to pay computed sum beginning January 2, 1981 until my death or such date as I no longer reside with R. Howell Morris.

|  | /s/ Mary H. Caudle |
| --- | --- |
| /s/ C. H. Adams | 1-29-81 |
| witness | date |
| /s/ Athleen M. Adams | 1-29-81 |
| witness | date |

The second document purports to distribute Mrs. Caudle's personal property among various family members, effective at her death. The third document purports to leave her house to Robert Howell Morris, if it was not sold before her death. The witnesses to Mrs. Caudle's signature testified that they were not informed of the contents of these papers and that the Morrises were not present when they were executed. Mr. Morris testified that he was unaware of the documents until Mrs. Caudle gave them to him shortly before her death in 1983.

During Mrs. Caudle's 30 months of residence in the Morris home, she had a room of her own but shared the living and dining rooms with the family. Mrs. Morris prepared all Mrs. Caudle's meals in accordance with her special dietary requirements and saw to her other personal needs. Mr. Morris took care of her banking, maintained her former house, and ran errands for her. She made various gifts of money and other things of value to the Morrises.

Mrs. Caudle executed a will dated June 24, 1983, in the month before her death. The will disposed of her tangible personal property but left the residue of her estate to the United Virginia Bank, as trustee under an inter-vivos trust she had established ten years earlier, which she amended and re-adopted. The will and amended

trust agreement made dispositions of her estate among numerous relatives, and increased the legacies previously provided for the Morrises, but made no mention of the three documents dated January 25, 1981.

After Mrs. Caudle's death, Mr. Morris presented a claim to the commissioner of accounts for compensation based on the rates charged by the Chesterfield County Nursing Home during the 30 months of Mrs. Caudle's residence in his home, in accordance with the document dated January 25, 1981. The claim was contested by the executor and four of the residuary trust beneficiaries (the contestants). At a debts-and-demands hearing, the commissioner heard the testimony of twelve witnesses and received documentary evidence. The evidence concerning Mrs. Caudle's relationship with the Morrises was in sharp conflict.

Mr. Morris contended that a contract existed between himself and Mrs. Caudle, that he had fully performed his part of it, and that he was entitled to the compensation agreed upon. Alternatively, he argued that he was entitled to compensation on a *quantum meruit* basis. The contestants contended that the writings dated January 25, 1981, were testamentary in character and that they were therefore revoked by Mrs. Caudle's later will. Even if the Morrises were entitled to *quantum meruit* compensation, they argued, Mrs. Caudle's gifts to them during her lifetime had provided adequate compensation.

The commissioner's report found in favor of the Morris claim. The commissioner ruled that "the claimant and the decedent agreed verbally that the claimant would be compensated at nursing home rates for services provided the decedent during such time as she remained with him." The commissioner also ruled that the requirement of corroboration, imposed by Code § 8.01-397, was fully met by the document dated January 25, 1981, which Mrs. Caudle had signed before disinterested witnesses and delivered to Mr. Morris shortly before her death. Accepting the rates charged by the Chesterfield County Nursing Home, as established by the evidence, the commissioner allowed the claim against the estate in the amount of $48,100, with interest at 6% from the date of death.

The contestants filed exceptions to the commissioner's report. The circuit court initially set the exceptions for jury trial, as authorized by Code § 26-23, but thereafter, by agreement of counsel, agreed to hear the exceptions *ore tenus* upon the record made

before the commissioner and upon such further evidence as the parties might present.

At the hearing on the exceptions, four witnesses testified. One of these, a trust officer at the executor bank, merely testified to the size of the estate. Another witness repeated the evidence given before the commissioner with respect to the rates charged at the Chesterfield County Nursing Home. The third was Marjorie Hey Murdock, a niece of Mrs. Caudle's, who had testified before the commissioner. Her testimony demonstrated marked hostility to the Morrises and essentially repeated her earlier assertions that the relationship between the Morrises and Mrs. Caudle was poor.

The final witness was Douglas W. Conner, an attorney. Mr. Conner had drafted Mrs. Caudle's last will and inter-vivos trust and had represented the executor bank at the commissioner's hearing. Before the commissioner, Mr. Conner had cross-examined Mr. Morris extensively with regard to an estate-planning conference at the Morris home on June 20, 1983, attended by both Morrises, Mrs. Caudle, and Mr. Conner. He sought to establish that no mention had been made of the document dated January 25, 1981, even though he had inquired concerning Mrs. Caudle's assets and liabilities. The contestants relied on this silence as evidence that no contract or claim for compensation was contemplated by either Mrs. Caudle or the Morrises. Mr. Morris freely admitted, during this cross-examination, that he had not been asked about any potential claim against Mrs. Caudle or her estate at the estate-planning conference, and that Mrs. Caudle had not mentioned it. He said, "but she didn't always mention everything."

Mr. Conner withdrew as counsel in order to appear as a witness in circuit court. There, his testimony was primarily devoted to establishing the point already made: that all parties had been silent with respect to the potential Morris claim at the estate-planning conference of June 20, 1983. In sum, the additional testimony adduced in circuit court added nothing of substance to the evidence heard by the commissioner of accounts.

By letter opinion dated April 15, 1986, the court observed that it was aware of the weight to be given to the commissioner's report, but that "the ultimate decision is one to be made by me, according to the applicable principles of law and the evidence found by me to be most convincing." The court stated that it had found the evidence of Douglas W. Conner to be "persuasive." The

court then ruled that Mr. Morris "has not borne the burden of establishing a contract with the decedent" and expressed the opinion that "the writing of January 29, 1981, is testamentary in character, revoked in effect, by the will of June, 1983." The court entered a final order in June 1986, rejecting the Morris claim.

In effect, the court treated the hearing on exceptions to the commissioner's report as a trial *de novo*, at which the burden was again upon the claimant to establish his claim, with sufficient corroboration, by a preponderance of the evidence. The ruling impliedly discounted the commissioner's findings because the commissioner had not had the benefit of the additional evidence, including that of Mr. Conner, which the court found persuasive. But as earlier stated, the additional evidence heard by the court added nothing of substance to the evidence heard by the commissioner. The court, reviewing the same evidence, simply came to the opposite conclusion.

We think the court erred in its proceedings on the exceptions to the commissioner's report. Although Code § 26-33[1] does not explicitly provide for a further evidentiary hearing in circuit court when exceptions to a commissioner's report are heard, it is implicit in the statutory provision for jury trial that additional evidence may be adduced, and it is equally implicit that evidence which may be heard by a jury may also be heard *ore tenus*, in the court's discretion.

Nevertheless, such a hearing is not a trial *de novo*. We stated the applicable principles of law in *Hill* v. *Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984):

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, *it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence.* This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence

---

[1] Code § 26-33 provides, in pertinent part: "The court, or judge in vacation, after fifteen days from the time the report has been filed in its office, shall examine such exceptions as have been filed. It shall correct any errors which appear on the exceptions and to this end may commit the report to the same or another commissioner, as often as it sees cause; or it may cause a jury to be empaneled to inquire into any matter which, in its opinion, should be ascertained in that way; or it may confirm the report in whole or in a qualified manner, and shall certify in the order that it has made a personal examination of the exceptions."

. . . but is not applicable to pure conclusions of law contained in the report . . . . [W]here the chancellor has disapproved the commissioner's findings, this Court must review the evidence and ascertain whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court. Even where the commissioner's findings of fact have been disapproved, an appellate court must give due regard to the commissioner's ability, not shared by the chancellor, to see, hear, and evaluate the witnesses at first hand.

(citations omitted) (emphasis added).

■ Here, the chancellor made no finding that the commissioner's report was unsupported by the evidence. Indeed, all counsel agree on appeal that it was so supported. The contestants argue that although the evidence before the commissioner was sufficient to support a decree confirming his report, the additional evidence heard by the court justified the court's disapproval of the report. We do not agree. The commissioner's report came to the court armed with a presumption of correctness which the additional evidence heard in court did nothing to overcome. The court further erred in placing the burden upon the claimant to justify the commissioner's report and in rejecting the commissioner's factual findings.

■ The contestants argue that there was no evidence that the parties had agreed on a method of determining compensation when Mrs. Caudle moved into the Morris home. Mr. Morris concedes that he was unaware that Mrs. Caudle intended to tie the rate of his compensation specifically to the fees charged by the Chesterfield County Nursing Home until she gave him the January 25, 1981, agreement, and he accepted it, shortly before her death. But the fact that the specific terms of the agreement were not agreed upon at its inception is immaterial to the claim. It is sufficient that the parties did agree, near the end of Mrs. Caudle's life, upon a formula whereby the Morrises would be compensated, after her death, for the care they had given to her. No challenge is made to the existence of the agreement reached at that time, and there is no dispute with respect to its terms. That contract forms the basis of a valid debt owed by the estate.

The contestants contend here, as they did below, that the January 25, 1981, document was testamentary in character and that it

was therefore revoked by the will made in 1983. Further, they argue, the commissioner's opinion to the contrary was merely a conclusion of law, to which no presumption of correctness attaches. Therefore, they contend that the trial court correctly held that the 1981 document was of no effect.

■ If we assume, without deciding, that the 1981 document was testamentary in character and was therefore revoked in 1983, it does not follow that it is to be disregarded. Even if it had no force as a will, it served as strong corroborative evidence of the existence of an oral contract. It showed that the decedent's understanding of the terms of compensation to be paid for her care agreed with those to which Mr. Morris testified. The document met the requirement of corroboration imposed by Code § 8.01-397, and was expressly made admissible by that section for the very purpose of corroboration.[2]

For the foregoing reasons, we will reverse the order appealed from, reinstate the commissioner's report, and enter final judgment here, allowing the claim.

*Reversed and final judgment.*

---

[2] Code § 8.01-397. In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony; and in any such action, whether such adverse party testifies or not, all entries, memoranda, and declarations by the party so incapable of testifying made while he was capable, relevant to the matter in issue, may be received as evidence in all proceedings including without limitation those to which a person under a disability is a party.