## CIRCUIT COURT OF LOUDOUN COUNTY

John A. Andrews

v.

Riggs National Bank
of Washington, D.C.

October 2, 1996

Case No. (Chancery) 16911

BY JUDGE JAMES H. CHAMBLIN

On September 16, 1996, this proceeding on exceptions to an accounting pursuant to § 26-33 came on for hearing. Initially, the Riggs National Bank of Washington, D.C., agreed that the following exception to the trustee's accounting should be sustained:

> 4. Attorney's fees of $146,183.00 should not have been included in the calculation of the outstanding indebtedness, nor should it be deducted from the purchase price.

Accordingly, this exception is sustained.

Of the other three exceptions, one was overruled and another sustained by order entered herein on August 20, 1996.

The Court then proceeded to hear evidence and argument of counsel as to the remaining exception:

> 2. The real estate taxes of $639,180.63 should not have been included in the calculation of the outstanding indebtedness, nor should it be deducted from the purchase price.

For the reasons that follow, this exception is sustained.

### I. *Facts*

On October 9, 1987, Loudoun Gateway Limited Partnership executed an Amended and Restated Promissory Note payable to the Bank in the

original principal amount of $23,000,000.00 secured by an Amended and Restated Deed of Trust of the same date on certain real estate located in Loudoun County. There was a default in the payment of the Note which led to a foreclosure sale by Bruce W. Henry and Jay D. Brownstein, Substitute Trustees, under the deed of trust on July 10, 1992.

The aforesaid Note and Deed of Trust, as well as the Amended and Restated Development Loan Agreement between the Bank and the Partnership dated October 9, 1987, were admitted into evidence.

At the time of the foreclosure sale, the County real estate taxes were delinquent. The advertisement of the Trustees' sale stated as follows: "Real estate taxes for the year 1992 to be adjusted to the date of sale."

At the foreclosure sale, the property was sold to the Bank for $8,750,000.00. A memorandum of sale was signed by Bruce W. Henry, Substitute Trustee, and by Robert Hugh Rial, Jr., a vice-president of the Bank. The memorandum referenced the aforesaid advertisement.

The property was conveyed by the Substitute Trustees to RBV-LGL, Inc., an assignee of the Bank, by deed dated July 17, 1992, and recorded July 30, 1992. The 1992 real estate taxes were not paid prior to or at the time the deed was recorded.

A letter dated November 9, 1992, from Mr. Rial to Mr. Henry, states:

> Please be advised that the indebtedness on the loan secured by the above-referenced deed of trust in $29,708,517.22, which includes $22,799,584.39 principal balance, $6,123,569.20 accrued interest, $639,180.63 real estate taxes, and $146,183.00 legal fees and expenses. Only this property was taken subject to the real estate taxes.

In November, 1992, the substitute trustees filed their accounting of the sale with the Commissioner of Accounts. It states as follows:

An account of the proceeds of the sale is as follows:

| Purchase Price | . | $8,750,000.00 | |
|---|---|---|---|
| Publication costs: *Loudoun Times-Mirror* | | | $1,136.26 |
| Trustee's attorney's fees incident to foreclosure, to Bruce W. Henry, P.C. | | | $917.91* |

| | | |
|---|---|---|
| Grantor's tax on Trustee's Deed | | $8,750.00 |
| Commissioner of Accounts-Fee | | $1,263.00 |
| Amount credited on foreclosure upon indebtedness totaling $29,708,517.22 (includes $22,799,584.39 principal balance, $6,123,569.20 accrued interest, $639,180.63 real estate taxes and $146,183.00 legal fees and expenses.) | | $8,737,932.83 |
| TOTALS | $8,750,000.00 | $8,750,000.00 |

*through August 31, 1992. Additional amounts will be billed to Riggs.

The Commissioner of Accounts approved the accounting which was subsequently filed in the Clerk's Office on February 26, 1996. There was no debts-and-demands hearing before the Commissioner of Accounts. The certificate of the Commissioner of Accounts attached to the accounting when it was filed states that he "settled and completed the . . . account, which is sustained by proper vouchers."

The exceptions were timely filed on March 12, 1996.

## II. *Conclusions of Law*

It is implicit in § 26-33 that this Court hear additional evidence when exceptions to a report of the Commissioner of Accounts are heard. *Morris v. United Va. Bank*, 237 Va. 331, 337 (1989). The report should be sustained unless this Court concludes that the findings by the Commissioner are not supported by the evidence. This rule applies to a Commissioner's findings of fact based upon evidence taken in his presence, but it is not applicable to pure conclusions of law contained in the report. As stated in *Morris*, the report comes to the Court "armed with a presumption of correctness." Hence, the burden is upon the contestant to overcome the presumption. *Morris*, 237 Va. at 338.

There was no evidence of the "proper vouchers" submitted to the Commissioner of Accounts. Hence, it is impossible for this Court to determine exactly what evidence was presented to the Commissioner of Accounts upon which he approved the accounting. Also, the issue raised by the

exception is, at least partially, a conclusion of law. Therefore, this Court must rule on the exception based on the evidence presented before September 16, 1996.

The accounting shows that the real estate taxes were included in the indebtedness of the Partnership to the Bank to which a credit of $8,737,932.83 was given as a result of the foreclosure. The issue is whether the real estate taxes paid after the foreclosure sale and the resulting conveyance to the assignee of the successful bidder were secured by the deed of trust.

Under paragraph 6(a) of the deed of trust, the grantor (the Partnership) agreed to pay the real estate taxes. The deed of trust secures the performance of all covenants, obligations, and agreements required of the Partnership and the payment of all costs and expenses paid, advanced, or incurred by the Bank to protect or preserve the property. See page 3 of the Deed of Trust.

Under paragraph 10 of the Deed of Trust, the Bank, in its sole discretion and "upon reasonable prior written notice to" the Partnership, "may make such payment or do such act in such manner and to such extent as Noteholder [the Bank] may deem necessary to protect the security hereof."

Under § 4.5 of the Loan Agreement, upon the occurrence of an "Event of Default," the Bank may in its sole discretion advance funds on the Partnership's account, and the amounts so applied are part of the obligation secured by the Deed of Trust. Under § 6.1 of the Loan Agreement, the failure of the Partnership to pay when due any sums required to be paid under the Note, the Deed of Trust or the Loan Agreement, "if such failure shall continue for a period of five (5) days following written notice of such default," shall constitute an Event of Default.

The Bank never gave the Partnership notice of a default for nonpayment of the real estate taxes. Therefore, it did not meet a condition precedent to having the real estate taxes paid by the Bank become a part of the indebtedness secured by the Deed of Trust. Hence, it was improper to include the real estate taxes as a part of the indebtedness in the accounting.

By not paying the taxes before the foreclosure and then closing on the foreclosure sale without seeing that the real estate taxes were paid, the Bank lost its claim to have the real estate taxes included in the indebtedness secured by the Deed of Trust. It lost the claim because it, in fact, closed on the foreclosure sale subject to the real estate taxes. After the closing on the foreclosure sale, the Deed of Trust was no longer of any effect. The Bank could not, after the foreclosure, advance funds and seek

to have them secured by a deed of trust which had already been foreclosed upon at the direction of the Bank.

It is also unfair, at the least, to seek to include in the indebtedness secured under the Deed of Trust the real estate taxes which, in fact, were not paid when the accounting was signed and submitted to the Commissioner of Accounts.

For all the foregoing reasons, the exception is sustained.

### III. *Final Order*

An order modifying the accounting consistent herewith and the prior rulings in this case has been entered.