148

## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Ida S. Regan

v.

Leonard Andrew Dent

April 14, 1997

Case No. CH96-962

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this chancery suit, a 72-year-old widow seeks to recover more than $40,000.00 she advanced to her lover with the expectation that she would become co-owner of his property and in anticipation that her generosity would cement the relationship. The commissioner recommends restitution. For the reasons explained below, the court agrees.

### Facts

The plaintiff, Regan, was married for almost 50 years to a foreign service officer. They lived in various diplomatic communities around the world. After he retired, they moved to Stafford County, Virginia, and rented a house from their daughter.

Regan's husband died unexpectedly in March of 1994. His death left Regan emotionally devastated. Her psychologist, Dr. Michael Fray, testified that Regan suffered from post traumatic stress disorder with mild depression. The symptoms of this disorder caused Regan to obsessively seek companionship for comfort.

Regan met the defendant, Dent, a 70-year-old security guard, while she was working as a volunteer receptionist in a county office building. Five or six months after her husband's death, Regan began a romantic relationship with Dent. The relationship quickly developed into a physical one involving

frequent sexual activity. They saw one another regularly and often spent the night at each other's home.

As noted above, Regan lived in Stafford County in a house she rented from her daughter. She lived off a pension of $2,300.00 to $2,400.00 a month. She had about $100,000.00 in liquid investments and a small house near Orlando, Florida.

Dent earned a modest salary as a security guard with Wackenhut. He lived in a trailer, to which he had built an addition, on 5 1/2 acres in the Locust Grove area of Spotsylvania County. That property, valued at $40,000.00 to $60,000.00, was encumbered by a deed of trust.

As the relationship grew, Regan bestowed numerous gifts on Dent. She bought a utility cart, gravel for his driveway, clothes, shoes, and a trailer for his pickup truck. They dined out frequently, and she invariably paid the tab. They travelled to Florida, Williamsburg, and New Orleans, all on Regan's money.

Several months after they began seeing one another, the subject of Dent's deed of trust came up. Dent explained that most of his income went toward making the payments. He declined Regan's invitation to go with her on a trip to Ireland, at her expense, because he could not afford to miss the income from his job. Regan suggested that she pay off the note to alleviate Dent's financial strain. According to Regan, these conversations were always accompanied by Dent's expressions of intention to "put [Regan's] name on the deed."

On the morning of January 27, 1995, Regan and Dent went to the bank, and Regan paid off Dent's deed of trust loan with a check in the amount of $40,515.13.

Thereafter, Regan made several overtures to Dent to convey her an interest in his property. Dent declined. At first, he offered excuses; later, his response was anger. The relationship waned as Dent came up with more and more excuses for his inability to see Regan or why she should not come to his home. Eventually, he terminated the relationship.

Regan instituted this suit on February 29, 1996, seeking the return of her money on three theories: fraud, unjust enrichment, and breach of contract.

The court referred the case to a commissioner in chancery who conducted a pretrial conference and then held an evidentiary hearing. Testimony taken at the hearing is contained in a 246-page transcript.

The commissioner filed his report on January 6, 1997. In it he rejected Regan's request for specific performance, concluding that the evidence was insufficient to establish a contract by the terms of which Dent promised to convey Regan an interest in his Locust Grove property in exchange for her paying off his deed of trust note.

Similarly, the commissioner determined that fraud had not been proved by clear and convincing evidence. While acknowledging that silence may constitute fraud under certain circumstances, the commissioner reported that no "actionable fraud" had been established.

Nonetheless, the commissioner recommended that the court order restitution on the basis of unjust enrichment. Dent filed exceptions. Regan did not file exceptions to the commissioner's recommendations with respect to the fraud and contract claims.

Both parties submitted memoranda, and the court heard arguments on the exceptions on March 31, 1997, and April 8, 1997.

### The Commissioner's Report

While a commissioner's report does not have the weight given a jury verdict, Virginia Code § 8.01-610, it is entitled to respect and should not be disturbed unless its conclusions are unsupported by the evidence. Especially where, as here, the commissioner's findings of fact are based on evidence taken in his presence, those findings should be taken as prima facie correct and entitled to great weight. *Morris v. United Va. Bank*, 237 Va. 331 (1989); *Hill v. Hill*, 227 Va. 569 (1984). Nevertheless, the court has the duty to review the evidence fairly and to examine the commissioner's conclusions, especially his application of the law. The court has done that in this case.

The court is of the opinion that all of the commissioner's findings of fact are amply supported by the evidence. In arriving at factual conclusions with regard to the issue of unjust enrichment, the commissioner, upon the conflicting evidence, found Regan's testimony more believable. Because the witness testified in his presence, that determination was clearly within his province. Further, the court is of the opinion that the weight that the commissioner gave to the evidence and his determination of credibility are matters supported by the record.

### Unjust Enrichment

Unjust enrichment is an equitable doctrine that a person shall not be allowed to profit or enrich himself inequitably at another's expense. It applies when a person has something of value at another person's expense under circumstances that impose a legal duty of restitution. *Black's Law Dictionary* (4th ed. 1951), p. 1705.

The kind of equitable action, to recover back money, which ought not in justice to be kept, is very beneficial and therefore must be encouraged. It lies only for money which, *ex aequo et bono*, the defendant ought to refund .... [I]t lies for money paid by mistake; or upon a consideration which happens to fail; or for money got through imposition (express or implied); or extortion, or oppression, or an undue advantage taken of the plaintiff's situation, contrary to laws made for the protection of persons under those circumstances. In other words, the gist of this kind of action is, that the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity to refund the money. *Belcher v. Kirkwood*, 238 Va. 430 (1989), quoting *Robertson v. Robertson*, 137 Va. 378 (1923), which in turn was quoting a 1760 English decision by Lord Mansfield.

The commissioner recommended restitution, citing the principle enunciated in *Belcher*, after finding that Dent "accepted the payment of his note by [Regan] knowing full well that [she] was not behaving rationally"; that Regan's "judgment was distorted by her suffering from post traumatic stress disorder"; that "common sense dictates that no one of sound faculties would pay out such a large percentage of her resources to pay the note of another"; and that after the note was paid, Dent "pocketed the relevant documents and cruelly terminated his relationship with [Regan]." The commissioner also found that while Dent made no actual misrepresentation to Regan, he "lay in wait for her to make her next plea for affection and allowed her to pay large sums for his benefit." All of these findings of fact, as noted above, are supported by the evidence. In fact, the court concludes that the evidence establishes circumstances that can be phrased in even stronger language: Dent took undue and improper advantage of Regan by encouraging her or at least willingly allowing her to make purchases for him and, ultimately, to pay off his deed of trust note, knowing that she was hoping to create a lasting relationship and become co-owner of his property, at a time when he had no intentions of continuing the relationship or making her co-owner of his property and fully aware that she was not behaving rationally.

This is not the case of a jilted lover who wants the engagement ring returned because his betrothed has changed her mind and refuses to wed. Rather, Dent's conduct, if it does not constitute fraud, comes so close that in fairness and by ties of natural justice, he should be required by equity to refund the money got through imposition and undue advantage.

## Clean Hands

Next, Dent contends that Regan's claim is barred because she does not come to court with "clean hands." He argues that the parties' relationship, and thus the transaction that resulted in Regan paying off Dent's deed of trust loan, is "forbidden," and Regan cannot ask for the return of "gifts she made in furtherance of her illicit romantic engagement" with Dent.

It is settled that the misconduct relied upon in applying the doctrine must relate directly to the matter in litigation. It is not sufficient that the wrongdoing is indirectly connected with the subject of the suit. *Richards v. Musselman*, 221 Va. 181 (1952).

Here, Regan did not pay money to Dent or to someone on his behalf in exchange for his promise to commit a wrongful or illegal act. There is no evidence whatever that Dent was Regan's gigolo, which is what this argument suggests. Instead, Regan made gifts to Dent, spent money on his behalf, and paid off his loan in order to foster what she considered to be a viable romantic relationship and a potentially permanent one *and* because she had been led to believe that she would become co-owner of Dent's Locust Grove property. Under the facts of this case, the clean hands doctrine is not implicated.

## Partial Restitution

Finally, Dent argues that even if restitution should be awarded, it should be only for half the value of his Locust Grove property since by her own admission she paid off the loan in anticipation of becoming co-owner of that property.

Dent misconstrues Regan's testimony. Admittedly, she testified at length about her expectation of co-ownership, and she explained the reasons for that expectation. But, obviously, the more significant, overarching expectation was that this generous act, combined with her many others, would cement the parties' relationship. Knowing this and knowing that he did not share that expectation at all, Dent nonetheless allowed, if not encouraged, Regan's irrational acts.

Therefore, restitution should be for refund of the money advanced, as found by the commissioner, not for one-half the value of the property.

## Conclusion

Upon a review of the record and the applicable legal principles, the court is of the opinion that Dent's exceptions should be overruled and the commissioner's report should be confirmed.

Further, the commissioner's fee, which the court finds to be fair and reasonable, as well as the other costs, shall be assessed against Dent, as the commissioner recommended.