# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Eliza Polk Spence

v.

Thomas P. Spence

May 2, 2000

Case No. CH97-199

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this divorce case, Mr. Spence has noted fifty-six exceptions to the commissioner's report, ranging across every disputed issue in this protracted litigation.

*Background Facts*

Mr. and Mrs. Spence were married in 1990 in Palisades, New York. Two children were born of the marriage: Brenna, 8, and Tara, 5. The parties separated on September 1, 1995, when Mrs. Spence left the marital home with the girls and moved to Maryland.

Mrs. Spence initiated this litigation in April of 1997, alleging adultery and desertion. Mr. Spence answered and filed a cross-bill alleging desertion. Both parties sought, alternatively, a no-fault divorce based on separation in excess of a year. In an amended cross-bill, filed with leave of court in July of 1999, Mr. Spence added an allegation of post-separation adultery against Mrs. Spence.

In pendente lite proceedings, temporary custody of the children was awarded to Mrs. Spence; Mr. Spence was ordered to pay $625.00 per month

child support, $200.00 per month spousal support, and maintain medical insurance for the children.

The case was referred to a commissioner in chancery, who held hearings for five days in July and August of 1999. The commissioner filed a 41-page report.

Mr. Spence is 34 years old. He earns $53,700.00 at the Department of Defense. He is deaf, but otherwise is in good health. He is fluent in sign language.

Mrs. Spence is 35 years old. She is unemployed. She is pursuing her college education at Gallaudet College. Between 1995 and 1998, when she was employed, she earned between $6,800.00 and $11,700.00 a year. Mrs. Spence is deaf. Otherwise, she is in good health. She is fluent in sign language.

Both parties are educated, intelligent, and obviously have refused to allow their hearing impairments to restrict unduly their objectives, interests, and activities. They have ties to and relationships in both the hearing and non-hearing communities.

Mr. Spence filed 56 exceptions to the commissioner's report. Arguments on the exceptions were heard on April 17, 2000. This opinion addresses the exceptions.

*Divorce*

Mrs. Spence left the marital home on September 1, 1995. That occurrence, of course, gives rise to Mr. Spence's claim of desertion. Her primary justification for leaving was Mr. Spence's relationship with a co-worker, Donna Schuck. An additional, and related, justification was Mr. Spence's frequent absences during a period when she was suffering with a difficult pregnancy. Further, Mrs. Spence testified that Mr. Spence told her shortly before her departure that he did not want to be married to her.

Mrs. Spence admits that she had a brief, post-separation adulterous relationship. The affair was with a former college acquaintance, Richard Friends, to whom she had rented a portion of her basement in the fall of 1996. That, of course, is the basis of Mr. Spence's amended cross-bill.

Despite plenty of evidence regarding Mr. Spence's relationship with Ms. Schuck, Mr. Spence denies any adultery. Nevertheless, Mr. Spence has been living with Ms. Schuck in Maryland for the past two or three years.

Notwithstanding all this evidence — some direct, some circumstantial — related to marital offenses, the commissioner recommended a no-fault divorce under Virginia Code § 20-9(9). His reasons are set forth in the report.

Mrs. Spence did not take exception to the commissioner's report. Mr. Spence, however, contends that he is entitled to a divorce based on adultery. He cites authority for the proposition that even post-separation adultery may be grounds for a divorce based on adultery. See, e.g., *Barnes v. Barnes*, 16 Va. App. 98, 428 S.E.2d 294 (1993).

The court accepts the recommendation of the commissioner. Where two or more grounds for divorce exist, the court can select an appropriate ground. *Robertson v. Robertson*, 215 Va. 425, 211 S.E.2d 41 (1975); *Zinkhan v. Zinkhan*, 2 Va. App. 200, 342 S.E.2d 658 (1986).

In this case, it would be sadly ironic if Mr. Spence were granted a divorce on the ground of adultery based on a brief post-separation encounter by Mrs. Spence that had nothing whatever to do with the dissolution of the marriage, when his own extra-marital relationship, which continues to this day, whether platonic or romantic, clearly was a proximate cause of the breakup.

Therefore, as the commissioner recommended, Mrs. Spence will be granted a divorce based on separation in excess of one year.

## Custody

The commissioner capably recited and evaluated all the evidence related to custody. (See report, pp. 12-23.) He considered the factors enumerated in § 20-124.3. He considered the pro's and con's of joint custody versus sole custody. He weighed the testimony of witnesses, much of which was conflicting.

A commissioner's report is not entitled to the same weight as a jury verdict. Virginia Code § 8.01-610. However, where, as here, the evidence was taken in the commissioner's presence, his factual findings deserve great respect and should be set aside only when they are plainly wrong or there is no support for them in the record. It has been said that a commissioner's report is clothed with a "presumption of correctness" with respect to disputed factual matters. *Higgins v. Higgins*, 205 Va. 324, 136 S.E.2d 793 (1964); *Morris v. UVB*, 237 Va. 331, 377 S.E.2d 611 (1989).

Under familiar principles, the trier of facts ascertains the witness' credibility, determines the weight to be given their testimony, and has discretion to properly accept or reject any part of a witness' testimony. *Street v. Street*, 25 Va. App. 380, 488 S.E.2d 665 (1997). In this case, the commissioner accepted Mrs. Spence's version of the disputed testimony, or at least so much of it as was material to a proper determination of the issue of custody.

Upon an independent review of the evidence, and considering the statutory factors, the court agrees with the commissioner that sole custody of these girls should be awarded to Mrs. Spence.

This determination does not impugn the parenting abilities of Mr. Spence. As the commissioner noted, it is clear that "the children love their father and enjoy their time with him." Mrs. Spence must be cooperative and supportive with respect to the children's visitation with Mr. Spence.

A "sub-issue" in this custody dispute concerned the testimony of the children. At a pretrial hearing, the court ruled that Mr. Spence could not call Tara, who was only four years old at the time, as a witness. The court also ruled that Brenna, then seven years old, could not express a worthwhile preference under § 20-124.3(7), but she could be called by Mr. Spence as a fact witness if the commissioner found her competent under well-settled principles. Brenna testified, although the commissioner limited the areas of inquiry. Mr. Spence took exception to those rulings.

The court is of the opinion that none of the rulings pertaining to the children's testimony were unreasonable, improper, or prejudicial to Mr. Spence. The things he wanted the children to testify about were inconsequential, either because they were of merely tangential relevance, were admitted, or were proven by other evidence.

In any event, this court is mindful of the judiciary's grave concerns about allowing one parent to put young children through the experience of testifying against the other parent in custody proceedings. Such testimony, especially as it relates to adultery and other so-called marital offenses, ought not be introduced unless necessary to prevent a denial of justice. No such necessity existed here.

The commissioner made a number of recommendations regarding visitation. (See report, pp. 22-23.) The court accepts and approves those recommendations. Mr. Spence asks the court to go further, however, addressing a myriad of topics such as spring breaks, federal holidays, Christmas, birthdays, Mother's Day, Father's Day, and the like. In addition, he wants the court to direct that he be given "first call" if a care provider is needed. Further, he requests reasonable telephonic communications with the children. Finally, he asks for all-summer visitation.

All of the expanded visitation requests will be denied except as follows.

Notwithstanding the alternative weekend schedule, the children shall be with Mrs. Spence on Mother's Day and with Mr. Spence on Father's Day.

Notwithstanding the alternative weekend schedule, the children shall be with Mr. Spence for the first part of Christmas holidays until 11:00 a.m. on Christmas Day in 2000, and every even year; and from 11:00 a.m. on

Christmas Day until 5:00 p.m. on New Year's Day in 2001, and every odd year.

Mr. Spence shall have reasonable telephonic communication with the children, at his expense, especially on Wednesday evenings when he does not have visitation and on weekends when he does not have visitation.

Otherwise, the exceptions taken to the commissioner's recommendations regarding visitation are overruled.

### Equitable Distribution

In making an equitable distribution of the parties' property under § 20-107.3, the court must first identify the property, determine its ownership, classify it, and value it. Then, considering all the factors enumerated in subsection E of the statute, the court distributes the property (and allocates debts) in one or more of the methods allowed. The court may also address retirement benefits and pensions within the parameters of subsection G of the statute.

The commissioner performed these tasks. (See report, pp. 24-34.) Upon an independent review, the court is of the opinion that the commissioner's determinations are correct and his recommendations are reasonable and supported by the evidence.

Four aspects of the commissioner's recommendations regarding equitable distribution deserve particular comment.

Contrary to Mr. Spence's exceptions, the commissioner did not determine that Mrs. Spence's employee stock ownership plan with Allen Photo Service, her former employer, is her separate property. Instead, treating it as a marital asset, the commissioner distributed the plan to her as part of his overall distribution of marital assets under § 20-107.3.

A trust fund established for Mrs. Spence in 1970 was another source of controversy. The fund is controlled by Mrs. Spence's brother. During the marriage, she received disbursements when she was not working. Since the separation, she has regularly received $1,000.00 a month from the trust. Apparently, Mr. Spence disputes Mrs. Spence's evidence regarding the balance remaining in the trust. The commissioner correctly discounted this dispute because the trust clearly is Mrs. Spence's separate property, and because, according to the only evidence on the subject, she is not entitled to receive any portion of it in excess of $1,000.00 a month.

A third significant controversy concerns the former marital residence. The house was sold at a deficit, which Mr. Spence says Mrs. Spence should share. The commissioner detailed the post-separation history of the house, analyzed

the problem, and concluded that Mr. Spence should be responsible for the deficit. For the same reasons explained by the commissioner, the court concurs.

Finally, the commissioner recommended that Mrs. Spence be awarded 50% of the marital share of Mr. Spence's government retirement benefits, under subsection G of the statute. The court agrees with the commissioner. The court also agrees with the formula used by the commissioner to calculate the marital share (set forth on p. 33 of the report).

Therefore, the exceptions taken by Mr. Spence related to equitable distribution are overruled.

## Spousal Support

Computing income for purposes of support, the commissioner found that Mr. Spence's gross monthly income is $4,473.00. That figure is not disputed. The commissioner also considered Mr. Spence's net income and his monthly expenses.

The computations also involved Mrs. Spence's income, of course, and it is those findings that give rise to the next series of exceptions by Mr. Spence.

The commissioner determined that Mrs. Spence's sources of income, other than support from Mr. Spence, are (1) $607.00 a month in social security disability payments, and (2) $1,000.00 a month from the trust discussed above. She is a student at Gallaudet. She is unemployed. Her work history indicates that she has an earning capacity of approximately $6,800.00 to $11,700.00.

The controversy involves distributions from the trust. At one place in the report, the commissioner indicated that Mrs. Spence actually receives $1,000.00 a month from the trust; at other places, he imputes that income to her.

Although "actual income" and "imputed income" are different concepts, and the terms cannot be used interchangeably, a review of the evidence in this case easily explains the basis of the commissioner's finding on this point. Some of the evidence suggested that Mrs. Spence regularly receives the $1,000.00 since separation. Other evidence revealed that in some recent months she may not have received any money from the trust. The commissioner held, in effect, that Mrs. Spence should be charged with receipt of the money whether she actually received it or not, because the evidence established a pattern and practice of monthly distributions to her during periods when she was not working, especially since the parties' separation.

Viewed in this light, the commissioner's finding regarding the $1,000.00-a-month income figure does not possibly prejudice Mr. Spence.

Mr. Spence next argues that the commissioner should have attributed more income to Mrs. Spence. He points out that the trust has made disbursements for Mrs. Spence's tuition at Gallaudet and that some of Mrs. Spence's day care expenses are subsidized from other sources while she is attending college. Finally, Mr. Spence observes that Mrs. Spence's family recently purchased a house for her.

As Mr. Spence argues, gifts are included in the computation of gross income for purposes of determining support. Virginia Code § 20-108.2(C). Section 20-108.2(C) pertains to child support computations. However, the same definition of "gross income" should be used in determining spousal support. This is so even if the gift is irregular income, as is often the case, so that it may not extend into the future. *Goldhamer v. Cohen*, 31 Va. App. 728, 525 S.E.2d 599 (2000).

The court agrees with Mr. Spence that the gift of the house is income to Mrs. Spence. This result is consistent with *Goldhamer, supra.*

On the other hand, the payments from the trust for college tuition and the government subsidy for child care are not "gifts." These funds have been paid for Mrs. Spence's benefit in order to assist her in furthering her education. She does not actually receive the money, and she has no right to receive it.

Assuming that the payments referred to in the last paragraph are to be treated as gross income to Mrs. Spence, it is apparent that the court must consider that these benefits are for a specific purpose and by their nature cannot be used by Mrs. Spence for her general support and maintenance. It would be unjust and inappropriate to treat those special-purpose benefits as income to Mrs. Spence without some deviation based on the factors enumerated in § 20-107.1(E).

The commissioner correctly refused to impute additional income to Mrs. Spence because of her employment capability. Admittedly, Mrs. Spence has earning capacity of $800.00 to $900.00 a month. However, it is obvious that, if she were employed, she would not receive distributions from the trust. That has been the pattern and practice of the trust administration all of her adult life. It follows that Mrs. Spence could not be the recipient of job-related income and trust payments, so to attribute both to her in this litigation would be wrong.

Considering all the circumstances discussed hereinabove and the factors enumerated in § 20-107.1(E), the court is of the opinion that Mr. Spence does not owe Mrs. Spence a present duty of spousal support. Accordingly, the court

rejects the commissioner's recommendation that Mr. Spence pay Mrs. Spence $400.00 a month as spousal support and will award no spousal support.

The court agrees with the commissioner, however, that to completely bar Mrs. Spence from spousal support because of her post-separation adultery would constitute a manifest injustice. The court accepts the commissioner's rationale and conclusion on that point and will direct that Mrs. Spence's right to spousal support be expressly reserved in the decree.

## Child Support

The same computations made with reference to spousal support are made in calculating child support. Thus, the discussions regarding Mr. Spence's income and Mrs. Spence's income need not be repeated.

Without considering the gifts made to Mrs. Spence in 1999, her gross monthly income would be $1,607.00 and Mr. Spence's gross monthly income would be $4,473.00, for a combined gross income of $6,080.00. According to the statutory guidelines, the basic child support for two children would be $1,197.00. Mr. Spence's share (73%) of that would be $873.81. Giving him credit for health care coverage for the children, his presumptive child support obligation would be $825.81.

Considering all of the gifts received by Mrs. Spence, including the house, her gross monthly income soars to 81% of the parties' combined gross monthly income, the basic child support figure climbs to $2,100.00, and Mr. Spence's share of the obligation diminishes to 19%, or approximately $400.00. After receiving credit for health care coverage that he provides for the children, his child support obligation would be $352.00.

For the reasons explained in the section on spousal support and based on the factors enumerated in § 20-108.1(B), the court finds that the application of the guidelines after including the gifts would be unjust and inappropriate. The court is of the opinion that a deviation is imperative and that a fair and appropriate amount of child support for Mr. Spence to pay to Mrs. Spence is $825.00, beginning in May 2000.

## Costs and Attorney's Fees

The commissioner's recommendations regarding allocation of costs and an award to Mrs. Spence of $5,000.00 for attorney's fees are based on the evidence and sound reasoning and will be confirmed.

 

*Conclusion*

For the reasons explained in this opinion, all of Mr. Spence's exceptions are overruled but those related to spousal support and child support, which are sustained to the extent set out above. Otherwise, the commissioner's report is approved and confirmed.

The decree will contain a provision that all future matters pertaining to custody, visitation, and support be transferred to the Spotsylvania County Juvenile and Domestic Relations District Court, pursuant to § 20-79.