Present:  All the Justices

SCOTT T. ROBERTS, EXECUTOR OF THE
ESTATE OF LEVI J. ROBERTS, DECEASED

v.  Record No. 000071    OPINION BY JUSTICE DONALD W. LEMONS
                                     November 3, 2000
CRAIG T. ROBERTS, ET AL.

          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                     Marc Jacobson, Judge

     In this appeal, we consider whether Code § 64.1-57(1)(k)

insulates a fiduciary against a claim of negligence in the

preparation and filing of an estate tax return by an "agent or

professional representative."

                         I. Background

     Admiral Levi J. Roberts ("Levi Roberts") died on December

24, 1989 in the City of Norfolk.  On January 4, 1990,

appellant, Scott T. Roberts ("Scott" or "executor"), the

grandson of the deceased, was qualified as executor of the

estate of Levi Roberts.  Article VI of the will stated that,

"[i]n addition to the powers granted by law," the executor was

granted "the powers set forth in Section 64.1-57 of the Code

of Virginia," which were incorporated by reference.

     Under the terms of Levi Robert's will, a trust was to be

established for the benefit of his friend, Coralie B. Digges.

Digges was permitted to live in Levi Roberts' former residence

and receive a monthly sum from the estate for the remainder of

her life or until she remarried or abandoned the property, at

which time the trust would terminate.  The will provided that, upon termination of the trust, the residence with all furniture and fixtures would be conveyed out of trust to Scott and the remaining assets from the trust would be distributed to Scott's five siblings.  Each sibling would receive a one-sixth share of the assets, except for Craig T. Roberts ("Craig") who would receive a two-sixth share.

At the time of Levi Roberts' death, Scott owned bearer bonds that had been given to him by his grandfather.  The bonds were held in a safe deposit box owned jointly by Levi Roberts and Scott.

Scott testified that, shortly after he was appointed executor, the task of administering the estate became "tremendously more complicated, way beyond my area of expertise."  Accordingly, Scott "went to people that were in the business of doing this on a big scale . . . looking for what I thought was the best talent to help me get through all this."  Eventually Scott concluded that Sovran Bank[1] was most qualified to handle the estate.

Scott met with John B. Wallin, a vice-president of Sovran Bank, who "went to great lengths to explain to me all the pitfalls of handling your own estate or somebody else's

---

[1] Sovran Bank later became NationsBank and then Bank of America. We will consistently refer to Sovran Bank.

estate, and he made it clear to me that I really didn't have all the resources to do this and they did and they were probably the best candidate to handle that for me." Scott testified that he relied upon Sovran Bank to prepare the tax return for the estate accurately because "I had the biggest guy in town, and he had all the information. I felt comfortable that it was in their best interest to prepare it accurately for them and me."

Wallin testified that he and Scott had several meetings. According to Wallin:

> [W]e were asked to participate in two relationships, one relationship being assisting in the settlement of the estate. Our discussions would naturally focus on the bonds in that role. Any time somebody walks in a bank with cash or bearer bonds, you need to proceed with caution in my opinion.
> So we discussed that we did not want to serve in a fiduciary capacity. If Scott wanted to hire us as an agent for him as executor, we would act on his direction and follow his direction in settling the estate. We would achieve for him the things that needed to be done that he might not be capable of doing, like accountings, record keeping, safe keeping, and investing estate assets, looking at the – serving as an agent for the continued trusts that were I believe either trust or life estates that would have been under the will of Levi Roberts.

Wallin further stated that he would have informed Scott that Sovran Bank had a tax division to help prepare the estate

3

tax return.  Wallin also stated that on January 31, 1990, Sovran Bank received physical possession of the bonds.

Once the administration of the estate began, Scott's main contact with the bank was John Abbitt, a trust officer.  Scott provided Sovran Bank with any documents it requested and he specifically informed Abbitt that he had received bonds from his grandfather as gifts.  In addition, Wallin testified that he and Abbitt had discussed that there was a "high degree of potential that those bonds would be included in the taxable estate."

Mary L. Williams, a vice president and trust officer with Sovran Bank, prepared and signed the estate tax return.  The tax return did not list any bonds.  In addition, there was a section on the return which asked whether there was anything which was in a safe deposit box that was omitted from the return.  This section was left blank.

Scott testified that, prior to signing the tax return, he met with Williams and that:

> This is a complicated document.  For someone who knows nothing about this, who's never prepared a tax return, to review it in five or 10 minutes and to know everything about it is a stretch.
> I relied on experts who I hired to prepare this that knew all the details of my side, their side.  Everything that I knew about this they had all the details of, and they prepared this tax return correctly in reference to the law.

4

In addition, Scott stated that when he reviewed the tax return he asked Williams whether the bonds were included and she said "everything was included and it was correct."

Williams testified that she had met with Scott, but that she could not recall how many times. In addition, she was unsure whether she had a meeting with him to sign the estate tax return, but she admitted that in the normal course of business, she would have had such a meeting. Although the bank was in possession of the bonds, Williams testified that she was not aware that the bonds existed when she prepared the tax return. The federal estate tax return was filed on September 24, 1990 and the estate paid taxes in the amount of $167,749.28.

In 1990, Craig and the remaining siblings filed an action against Scott alleging that the bonds were property of the estate. A settlement agreement and release terminating that litigation was entered into by the parties in 1991. The parties agreed that the "bonds and all proceeds thereof are the sole property of Scott T. Roberts by gift from Levi J. Roberts." The document also provided that "this release shall not be deemed to release Scott T. Roberts as Executor and Trustee under the Will from any liability as a fiduciary for any acts or omissions occurring after the date hereof."

5

The Internal Revenue Service ("IRS") initiated an audit to determine whether the bonds should have been included in the taxable estate. On September 24, 1993, the IRS issued a Notice of Deficiency in the amount of $243,323.02. The IRS sought additional penalties totaling $230,576.64. Scott and the IRS subsequently reached a compromise, agreeing to a net deficiency against the estate in the amount of $193,687.43 and no additional penalties were assessed. In addition, the IRS and the Commonwealth of Virginia assessed interest against the estate totaling $99,276.05.

In 1996, Craig and his remaining siblings filed "Suit to Surcharge and Falsify" in the Circuit Court of the City of Norfolk. On July 1, 1996, the trial court entered an order sustaining Scott's plea of release as to the issue of ownership of the bonds and referring the remaining issues to a commissioner in chancery. Additionally on July 1, 1996, the trial court referred to the same commissioner in chancery the exceptions noted to a report of the commissioner of accounts concerning similar issues. After an evidentiary hearing, the commissioner in chancery issued his report.

The commissioner in chancery concluded that Scott had "not met his burden in overcoming the presumption of correctness of the facts set out in [the commissioner of accounts' report]." The commissioner of accounts had found

that Scott "refused to include the bonds on the Inventory of the estate assets" and had filed federal and state estate tax returns "omitting mention of the bonds."  The commissioner of accounts surcharged Scott individually for interest and attorney's fees in the controversy with the IRS.  There is no indication that the commissioner of accounts heard testimony of witnesses and his report makes no mention of Code § 64.1-57(1)(k).

The commissioner in chancery concluded that Scott owed a duty to the estate to review in detail the estate tax return and indicated that while Sovran Bank "certainly was negligent," Scott "did not use 'reasonable care and skill' when he blindly relied upon Sovran Bank."  Accordingly, the commissioner in chancery recommended that Scott be surcharged $40,379.76, a figure representing the loss to the estate as a result of the late payment minus income earned by the estate from those funds as a result of the taxes not having been paid when due.

Both parties filed exceptions to the commissioner in chancery's report and on April 3, 1998, the trial court issued an opinion confirming its main findings and recommendations. Specifically, in a July 6, 1998 order, the trial court ruled that the commissioner in chancery applied the correct legal standard in determining the consequences of Scott's reliance

7

on professionals to file the estate tax return.  Additionally, the trial court ruled that the executor was negligent in failing to pursue a claim against Sovran Bank on behalf of the estate.

On appeal, Scott maintains that the trial court erred in confirming the commissioner in chancery's recommendation that he be surcharged for interest assessed for late payment of additional estate taxes.  Specifically, Scott contends that he was not negligent in his reliance upon Sovran Bank and pursuant to § 64.1-57(1)(k), he may not be held liable for the negligence, if any, of Sovran Bank.  Additionally, Scott asserts that the trial court erred in finding him negligent for not pursuing a claim on behalf of the estate against Sovran Bank.  Scott further contends that the commissioner in chancery and the trial court did not consider the binding effect of adverse witnesses' testimony.  He maintains that the report of the commissioner of accounts was not supported by the evidence and was based upon erroneous legal principles, and consequently, was not entitled to any deference.  Finally, Scott contends that, if he is subject to surcharge, it was improperly calculated.

Craig and the remaining siblings assign no cross-error, but urge the affirmance of the trial court's rulings.

## II.  Standard of Review

8

We have previously summarized the rules to be applied when a trial court considers a report of a commissioner in chancery and when we review the matter on appeal.

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence.  This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of law contained in the report.  On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong;

Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984) (citations omitted).  The same principles of law apply to a trial court's consideration of a report of the commissioner of accounts.  Morris v. United Virginia Bank, 237 Va. 331, 377 S.E.2d 611 (1989).

In the case before us, exceptions were noted from the report of the commissioner of accounts.  Contemporaneously, a chancery action entitled "Suit to Surcharge and Falsify" was filed in the trial court.  The issues were similar in nature and the trial court referred both the chancery suit and the exceptions to the commissioner of accounts' report to the same commissioner in chancery.  Upon exceptions to the commissioner in chancery's report, the trial court had before it the exceptions to the commissioner of accounts' report

augmented by additional findings of the commissioner in chancery and the commissioner in chancery's report on the referred chancery suit.  See Code § 26-33.

### III. Analysis

Section 64.1-57 grants a fiduciary certain specific powers if the statute is incorporated in whole or in part into any will or trust agreement.  Scott contends that a surcharge for interest charged to the estate for failure to include the bonds in the taxable estate may not be imposed upon him because he falls under the umbrella of protection provided by Code § 64.1-57(1)(k) which specifies that a fiduciary has the power:

> To employ and compensate, out of the principal or the income or both as to the fiduciary shall seem proper, agents, accountants, brokers, attorneys-in-fact, attorneys-at-law, tax specialists, licensed real estate brokers, licensed salesmen and other assistants and advisors deemed by the fiduciary needful for the proper administration of the trust or estate, and to do so without liability for any neglect, omission, misconduct, or default of any such agent or professional representative provided he was selected and retained with reasonable care.

In our interpretation of this statute, we must "ascertain and give effect to the intention of the legislature [and] that intention must be gathered from the words used."  Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934).  When the language of a statute is clear and unambiguous, the statute's

plain meaning must be accepted.  Virginia Dept. of Labor v.

Westmoreland Coal Co., 233 Va. 97, 99, 353 S.E.2d 758, 760-61

(1987).

The clear and unambiguous language of the statute states

that fiduciaries are entitled to employ agents "and to do so

without liability for any neglect, omission, misconduct, or

default of any such agent or professional representative

provided he was selected and retained with reasonable care."

We find that this language evinces an intent of the

legislature to shield certain fiduciaries from liability for

the actions of the agents they select to aid them in the

administration of their duties.  The statute does not,

however, preclude a fiduciary from being liable for his own

negligent conduct.

The commissioner in chancery's report states that:

> The Executor testified he employed Sovran
> Bank to advise him as to the administration of
> Levi Roberts Estate because of their expertise
> in estate administration and that he was not
> experienced and qualified to do so.  At the
> beginning of his relationship with Sovran Bank,
> Executor Roberts advised Sovran Bank of the
> gifts of the municipal bonds by Levi Roberts.
> He also employed Sovran Bank to administer his
> personal assets, including the $585,000.00
> municipal bonds gifted by Levi Roberts to him.
> He relied upon Sovran Bank to advise and
> perform the administrative duties which an
> executor performs.
> The Levi Roberts Estate Tax Return was
> prepared by Sovran Bank as part of their duties
> for which they were employed with full

knowledge of the facts and circumstances about the $585,00.00 <u>inter vivos</u> gifts of municipal bonds by Levi Roberts to Executor Roberts.

Trust Officer John Wallin of Sovran Bank was the marketing person with whom the Executor first met. Wallin and John Abbitt, who the Executor described as his Sovran contact person, discussed the gift and advised that the Executor would have to be able to prove such bonds were gifts; and that there was a high probability such bonds would be held by IRS to be part of the taxable estate. Such discussion occurred shortly after Sovran Bank was employed by Executor Roberts.

The Executor testified that he spent no more than ten minutes with Mary Williams, the Sovran Bank employee who prepared the Levi Roberts Estate Tax Return. He did not read such return, expecting same to be correct.

These factual findings indicate that the commissioner in chancery determined that: (1) the executor selected Sovran Bank to assist him in the administration of the estate because of the bank's expertise; (2) the executor relied upon Sovran Bank because of its expertise; (3) Sovran Bank knew of the bonds prior to preparing the tax return for the estate; and (4) the executor fully informed Sovran Bank of the facts necessary to prepare the tax return for the estate.

Despite these findings, the commissioner in chancery concluded that "the Executor owed a duty to the Estate to review in detail the Levi Roberts Federal Estate Tax Return . . . [and] the Executor did not use 'reasonable care and skill' when he blindly relied upon Sovran Bank." The trial court confirmed these conclusions. Upon review of the record,

we hold that the trial court and the respective commissioners erred in their application of Code § 64.1-57(1)(k) to the facts of this case.

Code § 64.1-57(1)(k) would be rendered meaningless if a fiduciary could hire an agent whose expertise is essential to managing an estate or trust and then be held liable for relying on the expertise provided by that agent. There is no evidence of negligence in Scott's selection or retention of Sovran Bank. His reliance upon the bank's work was not "blind"; rather, it reflected the sort of reliance anticipated by Code § 64.1-57(1)(k), which contemplates the situation where a fiduciary does not have the ability to perform this function himself.

In addition to confirming the commissioner in chancery's report, the trial court stated that:

> [A]ssuming arguendo that the Executor is correct and cannot be held liable for his own negligence because of Section § 64.1-57(k) and, assuming arguendo Sovran Bank is the sole wrongdoer and Sovran Bank was liable because its agents knew of the bonds, the Estate gained a chose in action following the injury to the Estate resulting from the alleged wrong doing of Sovran Bank. The Executor had a duty to pursue this asset by taking appropriate legal action against Sovran Bank.

There is no evidence supporting the conclusion that Scott was negligent in not filing a claim against Sovran Bank. First, there is no evidence as to whether such action was or

13

was not considered by Scott. Furthermore, in its opinion, the trial court noted that attorney's fees for such an action could not be recovered, raising the question whether an action against Sovran Bank would have been cost effective. Finally, Sovran Bank was not a party to this litigation and had no opportunity to assert defenses to claims of its negligence. There is no evidence of potential defenses to a claim by the estate against the bank. On this record the trial court erred in concluding that the executor was negligent in failing to pursue a claim against Sovran Bank.

We hold that Code § 64.1-57(1)(k) insulates the executor from liability for any negligence that may have been committed by Sovran Bank in failing to include the bonds in the taxable estate. The executor was entitled to rely upon the bank's expertise in the preparation and filing of the estate tax return. Additionally, there is no evidence to support the conclusion that the executor was negligent in failing to maintain a cause of action on behalf of the estate against the bank. The trial court erred in surcharging the executor.

It is not necessary to consider Scott's assignments of error based upon evidentiary issues and improper calculation of the surcharge. We will reverse the judgment of the trial court and remand the matter for entry of orders consistent with this opinion.

14

Reversed and remanded.