COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Huff, Lorish and Senior Judge Petty


JOSEPH T. ELLIOTT, JR.

                                                    MEMORANDUM OPINION*
v.        Record No. 2003-22-2                          PER CURIAM
                                                     AUGUST 22, 2023
LA KRISTA M. FANT, ET AL.


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                        Edward A. Robbins, Jr., Judge

          (Henry W. McLaughlin; Law Office of Henry W. McLauglin, P.C.,
          on briefs), for appellant.

          (Michelle L. Ferris; Ferris & Ferris, on brief), for appellee.

          No brief or argument for appellee Heritage Title Company of
          Virginia, Inc.


        Joseph T. Elliott, Jr. appeals the trial court's order dismissing with prejudice his claim for

partition of certain residential property in Chesterfield County, Virginia, and for damages, ordering

reformation of the title to that property to vest clear title to the whole property in appellee, La Krista

M. Fant, and taxing to Elliott $6,000 for services of the Commissioner in Chancery. After

examining the briefs and record in this case, the panel unanimously holds that oral argument is

unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a).

As such, we affirm.

_____

        * This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In 2003, Elliott purchased a home in Chesterfield County, Virginia. The home occupies two lots (Lots 5 and 6) in the West Chesterfield Heights neighborhood. In 2006, Elliott refinanced the original deed of trust secured by Lots 5 and 6. The new deed of trust, however, mistakenly included only Lot 6 in the legal description of the property. In 2014, Elliott suffered financial reversals leading to foreclosure of the new deed of trust. Elliott vacated the property, surrendering possession to his lender consistent with his understanding that the loan was secured by both Lots 5 and 6, and the house. Elliott knew he had lost possession of the house and both lots and did not challenge the foreclosure.

Fant subsequently purchased what she believed was the entire property (Lots 5 and 6 and the house), unaware that Lot 5 had been erroneously omitted from the 2006 deed of trust. About nine months after Fant moved in, Elliott approached her asserting ownership of half of the property, despite his previous intention and understanding that the entire property served as collateral for the foreclosed loan. Elliott demanded that Fant pay rent to him for Lot 5, purchase Lot 5 from him, sell the residence and split the net proceeds with him, or allow him to occupy half of the house.

Fant refused, and Elliott sued. Elliott asked the trial court to either order Fant to purchase his claimed half of the property from him and to pay him a fair rental value on that half of the property from March 2015 until completion of the sale, or to order partition and sale of the property and to distribute the proceeds between himself and Fant, with a deduction from Fant's share payable to Elliott for fair rental value as noted above. Elliott admitted in his complaint that "the facts of this

---

[1] "On appeal, we review the evidence in the light most favorable to the party prevailing below, here the Commonwealth, together with all reasonable inferences that may be drawn therefrom." *Dotson v. Commonwealth*, 47 Va. App. 237, 241 (2005). *See also Morrill v. Morrill*, 45 Va. App. 709, 712 (2005). "That principle requires us to 'discard the evidence' of [Elliott] which conflicts, either directly or inferentially, with the evidence presented by [Fant] at trial." *Artis v. Jones*, 52 Va. App. 356, 359 (2008) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

case demonstrate that Fant has been the victim of an error not of her making which she could not reasonably" have anticipated and that the deed of trust "should have" included both lots.

Fant answered and filed a third-party complaint against Heritage Title Company of Virginia, Inc. (Heritage) and WFG National Title Insurance Company (WFG), asking the trial court to order them to "indemnify Fant for any and all expenses for which she is liable to Elliott," to find them "liable for all attorney's fees and costs incurred by Fant in having to defend the action," and to grant "such other further relief as the Court may deem just and proper."

The trial court appointed a Commissioner in Chancery who submitted findings and recommendations after hearing evidence. The commissioner found that Elliott was the record owner of Lot 5 and that Fant was the record owner of Lot 6. He found further that Elliott "turned over equitable title, [and] possession, of the home and both lots to his lender" when the latter foreclosed on the property, that "[e]veryone involved with the foreclosure, including Elliott, believed that the legal title to the residence and both lots passed to the foreclosing lender," and that equitable title to Lot 5, along with legal title to Lot 6, passed to the lender. Noting that "Fant purchased the residence and the lots from the lender paying a price in keeping with their foreclosure values, took title to Lot 6 and believed that she took title to Lot 5," the commissioner found that "Fant was a bona fide purchaser for value of the residence and both lots without notice of any adverse claim." As evidence of this, the commissioner pointed to Fant's payment of $110,000 for the residence and both lots and her additional expenditures to renovate the residence and the grounds of both lots. The commissioner concluded that Fant was "the equitable owner of [the disputed lot] and that portion of the residence on [it] having possession of both and having paid for both" and that "Elliott ha[d] not proven any damages at the hands of Fant."

The commissioner recommended that the trial court dismiss Elliott's complaint against Fant with prejudice and that it use its equitable powers to order reformation of the land records,

beginning with Elliott's refinancing in December 2006, to include both lots, thus effectively vesting legal as well as equitable title in Fant. The commissioner further recommended that the trial court order both third party defendants Heritage and WFG to indemnify Fant "for any and all monetary losses that she sustain[ed] in order to defend herself against" Elliott's claims, "including but not limited to, her attorney's fees, court costs, expenses of these lawsuits, and any other funds she may be required to pay to clear title to Lot 5 . . . into her name." The commissioner further recommended that the trial court order Heritage to indemnify WFG for "any and all monetary losses" it sustained defending against Fant's third party complaint.

By an order entered on November 30, 2022, the trial court confirmed the commissioner's report in part, denied Elliott's claims, ordered equitable reformation of the deed to vest clear title in Fant, and taxed $6,000 in costs to Elliott. The trial court deemed the case between Elliott and Fant "only" to be "final," ordering it "stricken from the active docket . . . and filed among the ended cases." However, the trial court took the commissioner's recommendations concerning Heritage and WFG under advisement pending reformation of the land records concerning Lot 5 in Fant's favor. The trial court entered an order effectuating that reformation on January 4, 2023.

ANALYSIS

I. Jurisdiction

"Before addressing the merits of an appeal, we must first determine whether we have jurisdiction." *Minor v. Commonwealth*, 66 Va. App. 728, 737 (2016). Generally, this Court has jurisdiction to consider an appeal from "any final judgment, order, or decree of a circuit court in a civil matter." Code § 17.1-405(3).

> Unless otherwise provided by rule or statute, a judgment, order or decree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action *against all parties*, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order or decree.

- 4 -

Rule 1:1(b) (emphasis added). By its clear terms, the challenged order did not dispose of all claims against all parties because the trial court reserved judgment as to the claims between and against Heritage and WFG. However, this Court has jurisdiction to hear the appeal because the trial court's order "involve[d] an equitable claim in which the . . . order . . . require[d] . . . title of property to be changed." Code § 17.1-405(A)(5)(i).

## II. Elliott has waived most of his claims under Rule 5A:20(e).

Elliott challenges several of the commissioner's findings and recommendations and the trial court's implementation of them. These include divesting him of record title, vesting record title in Fant, and reforming the deed to so reflect, denial of his claim for rent from Fant, granting Fant's motion to strike his evidence, overruling his objections to the commissioner's recommendations, finding that he came to court in this matter with unclean hands, and taxing $6,000 in commissioner's fees and expenses to him.

Merely stating a brute claim on appeal is insufficient. Rule 5A:20(e) requires that the appellant's opening brief contain "[t]he standard of review and the argument (*including principles of law and authorities*) relating to each assignment of error." (Emphasis added). "Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration." *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (quoting *Cirrito v. Cirrito*, 44 Va. App. 287, 302 n.7 (2004)). "Where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017)). *See also Jay v. Commonwealth*, 275 Va. 510, 520 (2008) (Where a party's failure "to strictly adhere to the requirements of Rule 5A:20(e)" is significant, this Court "may treat a question presented as waived."). Consistent with those principles, we have held that a criminal defendant's failure to comply with Rule 5A:20(e) was

significant when he made "one reference" to a single case and failed to support his argument "with any legal analysis or authority from [that case] or any other source." *Bartley*, 67 Va. App. at 745. Consequently, we declined to consider his arguments, finding that his opening brief left this Court without a "legal prism through which to view his alleged error." *Id.* at 746.

Elliott's claims consist mostly of conclusory statements asserted ipse dixit, leaving this Court without a legal prism through which to consider the alleged error. Such claims are waived.[2] *Blankenship*, 71 Va. App. at 623 n.2. He supports only two positions with legal authorities—his claim that divesting him of record title violated his due process rights under the Constitution of Virginia, and his objection to having been taxed with commissioner's fees and expenses. We begin with the latter point.

### III. Taxing $6,000 in commissioners' fees and expenses to Elliott

In objecting to the trial court's taxing $6,000 in commissioner's fees and expenses to him, Elliott relies on *Ramos v. Wells Fargo Bank, N.A.*, 289 Va. 321 (2015), which he characterizes as holding that "a party may not recover money damages not sought in an *ad damnum* clause." *See* Rule 3:2(c)(ii) ("Every complaint requesting an award of money damages shall contain an *ad damnum* clause stating the amount of damages sought."). Elliott's reliance on *Ramos* is misplaced. In *Ramos* our Supreme Court affirmed a trial court in sustaining a demurrer where, inter alia, the complaint "contain[ed] no *ad damnum* clause stating the amount of any damages claimed." *Ramos*, 289 Va. at 323-24. *Ramos* is inapposite because the $6,000

---

[2] Claims so waived include Elliott's assertion that the trial court erred in overruling his exception to the commissioner's conclusion that he lost equitable title to Lot 5 upon foreclosure of the deed of trust, that the trial court erred in overruling his exception to the commissioner's finding that Fant owed Elliott no rent, and finding grounds for the reformation of the deed to Lot 5, that the trial court erred in granting Fant's motion to strike, and that the trial court erred in finding that Elliott came to the controversy with "unclean hands."

was not damages awarded to Fant to satisfy a claim against Elliott; rather, the $6,000 was the cost due to the commissioner for adjudicating the claim that Elliott brought.

Moreover, Elliott waived this point by never having objected to the taxing of commissioner's fees and expenses to him before the trial court. "[W]e are a court of review, not of first view." *Glacier Northwest, Inc. v. Int'l Brotherhood of Teamsters, Local No. 71*, 143 S. Ct. 1404, 1415 n.3 (2023) (alteration in original) (quoting *Cutter v. Wilkinson*, 544 U. S. 709, 718 n.7 (2005)). "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "This contemporaneous-objection requirement affords 'the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 236 (2022) (quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). Although there are exceptions to Rule 5A:18, "[Elliott] has not invoked" them, "and we do not consider them *sua sponte*." *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023) (citing *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc)); *cf. Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017) (noting that the Supreme Court does not invoke the exceptions to Rule 5:25 sua sponte).

IV. Divestiture of Elliott's legal title and equitable reformation of the deed in favor of Fant

This brings us to Elliott's sole surviving claim: That divesting him of record title to the property violated Article I, Section 11 of the Constitution of Virginia, providing in pertinent part that "[n]o person shall be deprived of life, liberty, or property without due process of law." Citing only the City of Chesapeake circuit court case of *BBR Investments, LLC v. JEMD Realty, LLC*, 107 Va. Cir. 339 (2021), Elliott claims that his constitutional rights have been violated

because "no pleading was ever filed putting [him] on notice [that] he was being sued to deprive him of ownership of real property."

*BBR Investments* is inapposite. It addressed an order approving the sale of real property entered at the behest of a receiver, where certain junior lienholders received no notice or opportunity to be heard on the sale. *Id.* The divestiture of Elliott's record title, by contrast, did not result from litigation instituted by a stranger without his knowledge. Rather, it is the product of legal proceedings that he initiated seeking to divest Fant of part of her interest in the property. "Due process analysis involves a two-part inquiry. First, there must be a deprivation of a liberty or property interest. Then, '[o]nce it is determined that due process applies, the question remains what process is due.'" *Carter v. Gordon*, 28 Va. App. 133, 145 (1998) (alteration in original) (quoting *Jackson v. W.*, 14 Va. App. 391, 406 (1992)). As noted, Elliott initiated this action by seeking partition of the property, claiming "legal ownership of half of [the] home." Fant answered, categorically denying Elliott's ownership interest. Further, Elliott admitted during the litigation that he knew the omission of Lot 5 from the 2006 deed of trust was "a mistake." Under these circumstances, Elliott had ample notice of Fant's claim to ownership of the entirety of the property and a fulsome opportunity to be heard on it. Elliott received all the process due to him.

"Procedural due process rules are meant to protect persons not from the deprivation, but from . . . *mistaken or unjustified* deprivation . . . ." *Id.* (emphasis added). In this case, the commissioner found Fant was "the equitable owner of [the disputed lot] and that portion of the residence on [it] having possession of both and having paid for both." The commissioner further found that "Elliott ha[d] not proven any damages at the hands of Fant." The commissioner found "Fant to be an innocent party having done nothing wrong, and therefore the party with standing to receive equitable aid from the Court" and that "Elliott intended to pledge his entire property, Lots 5 and 6 and the residence on both, as collateral on his refinanced deed of trust in 2006."

- 8 -

The commissioner recommended that the trial court dismiss Elliott's claims with prejudice and use its equitable powers to correct the land records to reflect Fant's sole ownership of the whole property. The trial court confirmed the commissioner's findings and implemented his recommendations concerning Elliott's claim against Fant.

"While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence." *Daly v. Shepherd*, 274 Va. 270, 273 (2007) (quoting *Roberts v. Roberts*, 260 Va. 660, 667 (2000)). We conclude that the record amply supports the commissioner's findings.

## CONCLUSION

"On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong." *Id.* The decree below was not plainly wrong, and we affirm.

*Affirmed.*